IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **VENTURA & ASSOCIATES, L.L.C.,** a Utah limited liability company,<br><br>**Plaintiff,**<br><br>v.<br><br>**HBH FRANCHISE COMPANY, LLC,** a Georgia limited liability company; and **DOLPHIN WINDER LLC d/b/a WINDER FARMS,** a Utah limited liability company,<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:11cv631**<br><br><br><br>**Magistrate Judge Paul M. Warner** |

All parties in this case have consented to having United States Magistrate Judge Paul M. Warner conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is HBH Franchise Company, LLC's ("HBH") motion to dismiss for improper venue.[2]  On September 27, 2011, the court held a hearing on the motion.  At the hearing, Ventura & Associates, L.L.C. ("Ventura") was represented by Blake T. Ostler and C. Christian Thompson, and HBH was represented by Robert Clark.  Before the hearing, the court

---

[1] *See* docket no. 12 & 33.

[2] *See* docket no. 19.

carefully considered the motion, memoranda, and other materials submitted by the parties.  At the hearing, the court took the motion under advisement and ordered additional briefing.  After considering the arguments of counsel, as well as the additional materials submitted by the parties, the court renders the following memorandum decision and order.

## BACKGROUND

In August 2003, Ventura entered into a franchise agreement ("Agreement") with HBH to own and operate a HoneyBaked Ham and Cafe franchise.  The Agreement provided Ventura a protected territory that encompassed all of Washington County, Utah ("Exclusive Territory").  Under the Agreement, HBH was entitled to sell HoneyBaked Ham products only to (1) existing customers of HBH or its affiliates located within the Exclusive Territory as of the effective date of the Agreement and (2) new customers developed by HBH or its affiliates' sales department within the Exclusive Territory after the effective date.

Ventura alleges, inter alia, that HBH breached the Agreement by allowing others to encroach on the Exclusive Territory.  Specifically, Ventura contends that in 2008, HBH contracted with Dolphin Winder LLC d/b/a Winder Farms ("Winder") to sell HoneyBaked Ham products within Ventura's Exclusive Territory.

On June 6, 2011, Ventura filed this lawsuit in Third District Court, State of Utah, against HBH.  Ventura alleges the following five causes of action against HBH:  breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and tortious interference with contractual relations and prospective economic benefits.  Specifically, Ventura asserts that HBH exploits its franchisees by (1) "charging exorbitant fees and markups

on required purchases, and forcing franchisees to accept coupons from customers for free or highly discounted food items for which franchisees receive no reimbursement from HBH and which therefore benefit HBH by increasing its sales"; (2) "deliberately poaching the franchisee's customers through direct sales"; and (3) "selling products within the franchisee's protected territory through alternative channels of distribution and alternative distributors."[3]

On July 6, 2011, HBH removed this case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1441(a). On July 29, 2011, Ventura amended its complaint to add Winder as a party, as well as a claim for tortious interference against Winder. On August 12, 2011, HBH filed the instant motion to dismiss.

## DISCUSSION

HBH moves this court to dismiss this action for improper venue. Specifically, HBH argues that the Agreement contains a mandatory forum selection clause that requires Ventura to litigate any claims against HBH in Georgia. Section 20.7 of the Agreement provides, in relevant part:

> [Ventura] may bring an action only in state court for the county where HBH's principal place of business is located at the time the action is brought or in any federal court of the district where HBH's principal place of business is located at the time the action is brought. [Ventura] submits and irrevocably consents to the exclusive jurisdiction of such courts and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to such jurisdiction or venue.[4]

---

[3] Docket no. 13 at 3-4.

[4] Docket no. 14 at 17.

HBH contends that because its principal place of business is in Norcross, Georgia, Ventura was required to file this case in Georgia as set forth in the Agreement.

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue" under rule 12(b)(3) of the Federal Rules of Civil Procedure. *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992). "Mandatory forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" *Brahma Group, Inc. v. Benham Constructors, LLC*, No. 2:08-CV-970TS, 2009 WL 1065419, at *3 (D. Utah April 20, 2009) (quoting *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992)). "A forum selection clause may be unreasonable if it contravenes a strong public policy of the forum, 'whether declared by statute or by judicial decision.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  The United States Supreme Court has held that "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be [so] gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18.  Furthermore, "[i]f [Ventura] seek[s] to avoid the choice of venue provision based upon fraud or overreaching [it] must show that the inclusion of 'that clause in the contract was the product of fraud or coercion.'" *See Wood v. World Wide Ass'n of Specialty Programs and Sch., Inc.*, No. 2:06-CV-708 TS, 2008 WL 4328819, at *1 (D. Utah Sept. 16, 2003) (quoting *Riley*, 969 F.2d at 956).

Ventura alleges that the forum selection clause is unreasonable and should not be enforced on the following grounds.  First, Ventura asserts that because Winder is an

indispensable party not subject to jurisdiction in Georgia, enforcement of the forum selection clause would require it to pursue the same claims against HBH and Winder in separate forums. Ventura explains that public policy discourages bifurcation of related claims and, wherever possible, requires analogous issues to be heard in the same forum.  Second, Ventura argues that it would be cost prohibitive for it to pursue its claims against HBH in Georgia such that it would essentially deprive Ventura of its day in court.  And finally, Ventura asserts that the forum selection clause was procured by fraud and is therefore invalid.  The court will address each of Ventura's arguments in turn.

### (1)  Public Policy

Ventura argues that enforcing the forum selection clause would contravene the strong public policy of litigating all claims in one action before the same tribunal.  Specifically, Ventura asserts that because a Georgia court could not obtain personal jurisdiction over Winder, enforcing the forum selection clause would bifurcate this case, thereby violating the public policy of litigating related claims in one action.  Ventura relies heavily on a Utah Supreme Court case for this proposition.  *See Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 813 (Utah 1994).[5]

---

[5] As noted by Ventura, some courts have held that the parties' choice of law governs the determination of whether the forum selection clause is valid.  *See, e.g.*, *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 421 (10th Cir. 2006) (holding that a forum selection clause in an international agreement is interpreted under the law chosen by the parties); *Brahma Group, Inc.*, 2009 WL 1065419, at *6 (applying the law chosen by the parties to determine the validity of a forum selection clause).  However, other courts have held that the validity of the forum selection clause is a question of venue, which is procedural in nature, and therefore is governed by the law of the forum.  *See, e.g.*, *Wong v. Partygaming Ltd.*, 589 F.3d 821, 827-28 (6th Cir. 2009) (noting that a majority of circuits apply the law of the forum to determine the validity of a forum selection

The plaintiff in *Prows* was the principal owner and president of a Utah-based company that brought claims against two companies, one a Utah corporation and the other a Canadian company. *See id.* at 812. The plaintiff filed suit in Utah against both defendants, and the Canadian company moved to dismiss on the grounds that a forum selection clause contained in a contract between it and the plaintiff required all claims arising from that contract to be litigated in New York. *See id.* The plaintiff argued that if the forum selection clause was enforced, he would have to try the case in two forums: once in Utah against the Utah corporation and once in New York against the Canadian company. *See id.* The Utah Supreme Court held that "[r]equiring a bifurcated trial on the same issues contravenes the objective of modern procedure, which is to litigate all claims in one action if that is possible." *Id.* at 813 (quotations and citation omitted). Ultimately, the *Prows* court held that requiring the plaintiff to litigate a claim of conspiracy against both defendants in separate trials was unjust and would essentially deny him his day in court. *See id.*

Ventura argues that the instant case is nearly identical to *Prows*. Ventura urges this court to follow *Prows* and conclude that judicial economy necessitates a trial of all claims against HBH and Winder in the same forum. While at first glance this case and *Prows* appear to be analogous, there are some critical differences. The State of New York, the chosen forum in

---

clause); *Wood*, 2008 WL 4328819 at *2 (applying federal law of the forum to determine the validity of a forum selection clause although South Carolina law was the law chosen by the parties). The laws are similar because they all are derived directly from the United States Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Furthermore, the parties apparently do not dispute the governing choice of law as both have relied upon Tenth Circuit and Utah cases and neither have cited to the Eleventh Circuit or Georgia cases. As such, the court applies the law in accordance with the parties' briefs.

*Prows*, had no interest in the outcome of the case. *See id.* at 811. None of the parties were citizens of New York, the contract at issue was to be performed in Utah, the contract was executed in Utah, and the alleged breach and tortious activity all occurred in Utah. *See id.* In fact, the court noted, "Utah is the only state with an interest in the action." *Id.*; *see also Phone Directories Co., Inc. v. Henderson*, 8 P.3d 256, 262 (Utah 2000) ("We held [in *Prows*] that [the forum selection clause] was unfair and unreasonable because none of the parties had any connection with New York." (Howe, C.J., concurring)). Conversely, in the instant case, Utah is not the only state with an interest in the outcome of the lawsuit; Georgia has a considerable interest in this case. That is, HBH is a Georgia corporation, the parties agreed that Georgia law would govern their disputes, the Agreement was executed in Georgia, and HBH's alleged wrongful conduct took place in Georgia.

Furthermore, while the court appreciates the public policy against piecemeal litigation, it cannot conclude that judicial economy trumps the mandatory forum selection clause in this case. Although Ventura's claims against HBH and its claim against Winder are based on the same set of facts, none of the causes of action are alleged against *both* HBH and Winder. In *Prows*, the plaintiff asserted a claim for conspiracy against both defendants, and the court held that requiring him to twice prove a conspiracy between two defendants in two different forums was an unjustly onerous burden. *See Prows*, 868 P.2d at 813. Enforcing the forum selection clause in this matter will require Ventura to shoulder the burden of litigating its claims against two defendants in separate forums. The court, however, does not find the burden to be unjust or unreasonable.

Additionally, because none of the claims are alleged against both defendants, bifurcation of this case should be more easily manageable than in *Prows*.

Lastly, Ventura argues that Winder is an indispensable party. Ventura asserts that if it is required to pursue its claims against HBH in Georgia, HBH will likely move to dismiss the Georgia case on the grounds that Ventura failed to join an indispensable party. The court does not find this argument to be persuasive. It does not appear that Winder is an indispensable party as Ventura has not demonstrated that it cannot get complete relief in the absence of Winder. *See, e.g.*, *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1097 (10th Cir. 2003). Furthermore, it is likely that HBH would be estopped from making that argument before a Georgia court in light of the arguments it has made before this court.

Ventura has not demonstrated that judicial economy considerations should prevail over the mandatory forum selection clause agreed to by the parties. As such, the court concludes that Ventura's public policy argument fails.

### (2)  Due Process

Second, Ventura argues that like the plaintiff in *Prows*, enforcement of the forum selection clause would deprive Ventura of its day in court. In particular, Ventura asserts that the forum selection clause is unfair and unreasonable because Ventura cannot afford to litigate its claims in Georgia. Ventura states that nearly all of its witnesses reside in Utah and contends that it would be cost prohibitive to pay the expenses for these witnesses to testify in Georgia.

The court is not persuaded that enforcing the forum selection clause is so unfair and unjust that it would deprive Ventura of its day in court. Ventura has put forth no facts to support

its contention that litigation in Georgia would be significantly more expensive such that it would essentially deprive Ventura of its opportunity to pursue its claims against HBH. *See Wood*, 2008 WL 4328819, at *4 (rejecting the plaintiffs' argument that litigation in the chosen forum would be too expensive when there was "no actual information, as opposed to argument, that it would be so prohibitively expensive . . . that it would effectively deny [the plaintiffs] their day in court"); *see also Daley v. Gulf Stream Coach, Inc.*, No. 2:99CV534C, 2000 WL 33710836, at *3 (D. Utah March 3, 2000) (holding that the plaintiffs' "conclusory statements" that it would be more expensive to litigate out of state were insufficient to invalidate a forum selection clause). Although Ventura claims to have contacted lawyers in Georgia, it has not provided names, rates, or estimated costs. Furthermore, a Georgia venue would not change the place of depositions, as they would be taken where the deponents are, nor would it alter the place for document production. In addition, federal courts utilize e-filing, which reduces the role and, therefore, cost of local counsel. Likely, the only significant cost difference would be the trial, assuming the case is resolved through a trial. However, because Ventura has provided only conclusory statements regarding the cost difference, it has not demonstrated that enforcing the forum selection clause would effectively deny it its day in court. As such, the court concludes that this argument is likewise unpersuasive.

### (3)  Fraud

Third, Ventura asserts that the forum selection clause is overreaching and fraudulent and should not be enforced. Specifically, Ventura contends that the forum selection clause is a contract of adhesion because it obligates only Ventura to sue in a limited area; the same

restrictions are not placed on HBH. Ventura further argues that the forum selection clause is fraudulent because HBH knew that its unfair business practices would drive Ventura out of business leaving it financially unable to pursue its claims against HBH in Georgia.

The court is not persuaded by this argument for the following reasons. There is no evidence that Ventura was forced into the Agreement or that it had no other alternatives. "'[S]imply because the terms of a contract are embodied in written form developed by one of the parties does not automatically render it either a contract of adhesion or unenforceable.'" *Wade v. Meridias Capital, Inc.*, No. 2:10CV998 DS, 2001 WL 997161, at *2 (D. Utah March 17, 2011) (quoting *Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 906 n.1 (Utah Ct. App. 1995) (other quotations and citation omitted)); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (holding that a forum selection clause in the fine print contained on a cruise ticket, a non-negotiated form contract, is valid so long that it is not fundamentally unfair).

Furthermore, Ventura was on notice of the existence of the forum selection clause. In the Uniform Franchise Offering Circular that HBH provided to Ventura prior to executing the Agreement, HBH disclosed the following on the first page:

> THE FRANCHISE AGREEMENT AND THE AREA DEVELOPMENT
> AGREEMENT PERMIT YOU TO SUE ONLY IN THE STATE WHERE
> HBH'S PRINCIPAL PLACE OF BUSINESS IS LOCATED (CURRENTLY
> GEORGIA) AT THE TIME YOU FILE SUIT. OUT-OF-STATE LITIGATION
> MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR
> DISPUTES. IT MAY ALSO COST MORE TO SUE IN GEORGIA THAN IN
> YOUR HOME STATE.[6]

---

[6] Docket no. 23 at 6.

Notice of the forum selection clause also appears in the provision regarding litigation issues, along with a cross-reference to the actual contract provision. Thus, HBH expressly disclosed the existence of the forum selection clause and the potential risks of entering into the Agreement should a dispute arise. Moreover, George G. Ventura, a member of Ventura, is an attorney experienced in corporate matters. As such, Mr. Ventura should have understood that by executing the Agreement, Ventura was committing to litigate any claims against HBH in Georgia. Based on the foregoing, Ventura has failed to demonstrate that the Agreement or its forum selection clause was either overreaching or procured by fraud.

## CONCLUSION

Because Ventura has failed to demonstrate that the forum selection clause is fundamentally unreasonable under the circumstances or that it deprives Ventura of its day in court, the court concludes that the forum selection clause is valid and enforceable. "A primary reason for forum selection clauses is to protect a party . . . from having to litigate in distant forums all over the nation. . . . [S]uch provisions should be enforced when invoked by the party for whose benefit they are intended." *Coombs v. Juice Works Dev. Inc.*, 81 P.3d 769, 774 (Utah Ct. App. 2003) (quotations and citation omitted) (second alteration in original). HBH is "entitled to the benefit of its bargain which includes the forum selection clause." *Id.* (quotations and citation omitted).

Based on the foregoing, HBH's motion to dismiss[7] for improper venue is **GRANTED**.

The clerk of court is instructed to dismiss HBH from this case.

**IT IS SO ORDERED.**

DATED this 6th day of March, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[7] *See* docket no. 19.